UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

UNITED STATES OF AMERICA

-against-

LIN HU and JIAN HU,

        Defendants.
----------------------------------------------------------------X

**MEMORANDUM
DECISION AND ORDER**

08-CR-425 (BMC)

**COGAN**, District Judge.

  Church & Dwight claims an interest in certain assets forfeited to the government by defendant Lin Hu. Before me is the government's motion to dismiss Church & Dwight's Verified Claim and Statement of Interest in Defendant Properties (the "Verified Claim") for lack of standing pursuant to Rule 32.2(c)(1)(A) of the Federal Rules of Civil Procedure. Because Church & Dwight lacks a "legal interest" in these assets sufficient to establish standing, the motion is granted and the Verified Claim is dismissed.

## BACKGROUND

  The instant motion stems from a dispute over certain assets forfeited to the government following the criminal prosecution of Lin Hu, Jian Hu, and Jian Zhong ("JZ") Hu for trafficking in counterfeit goods. Church & Dwight, a company that brought a civil lawsuit against the same defendants for trademark infringement of Trojan-brand condoms (the "Trojan Case"), asserts that it obtained an interest in these particular assets which is superior to any interest of the government's.

  Defendants Lin and Jian Hu were managers of ZX Trading Corporation, a company that was founded and run by their brother JZ Hu. Together with other entities, ZX Trading Corporation imported thousands of counterfeit Trojan-brand condoms from China for resale in the United States. During the course of its investigation for the Trojan Case, Church & Dwight

executed a civil seizure at a warehouse used by ZX Trading Corporation. During the civil seizure, Church & Dwight found a hidden showroom displaying various counterfeit goods other than condoms, such as sunglasses and lunch boxes. This merchandise formed the basis of Lin and Jian Hu's subsequently guilty pleas for trafficking in counterfeit goods. Lin and Jian Hu did not specifically plead guilty to having trafficked in counterfeit Trojan condoms, although they admitted that JZ Hu did so on behalf of ZX Trading Corporation without their knowledge. JZ Hu was indicted for trafficking in counterfeit condoms but is currently a fugitive in China.

In December of 2003, JZ Hu purchased a house and property in the Flushing neighborhood of Queens, New York ("the Flushing Property"). JZ Hu purchased the house with a down-payment of $400,000 and Lin Hu lived in the house with JZ Hu's two sons, for whom she cared. JZ Hu placed the Flushing Property in Lin Hu's name, and permitted her to take money directly from ZX Trading Corporation to cover mortgage payments and childcare expenses. On November 15, 2005, Lin Hu took out a home equity loan on the Flushing Property for $250,000.

On September 19, 2007, this Court issued a temporary restraining order in the Trojan Case on behalf of Church & Dwight which restrained assets belonging to Lin Hu, Jian Hu, JZ Hu, and ZX Trading Corporation. The temporary restraining order was subsequently converted into a preliminary injunction that specifically restrained the Hus from transferring any proceeds from a sale of the Flushing Property.

Lin and Jian Hu pled guilty to criminal charges of trafficking in counterfeit goods on April 2, 2009, while the Trojan Case was still ongoing. Neither defendant allocuted to having trafficked in counterfeit condoms. At their sentencing on November 5, 2010, the Court entered a final order of forfeiture for a money judgment in the amount of $825,000, and Lin and Jian Hu's attorney represented to this Court that Lin Hu would sell the Flushing Property and use the

proceeds to satisfy the forfeiture order. On November 30, 2010, counsel for Lin and Jian Hu sent this Court a letter explaining that, because the Flushing Proceeds were subject to the preliminary injunction in the Trojan Case, the proceeds could not be forfeited to the government until Church & Dwight's interest in the proceeds was resolved.

Lin Hu sold the Flushing Property on December 10, 2010. After paying off the balance of the mortgage and the home equity loan, the net proceeds of the sale amounted to $300,322.00 (the "Flushing Proceeds"). On December 20, 2010, Church & Dwight settled its civil claims with Lin and Jian Hu. The basic terms of the settlement agreement were that Church & Dwight would release Lin and Jian Hu from its trademark infringement claims in exchange for certain funds held in the Hus' corporate bank accounts and a permanent injunction preventing Lin and Jian from dealing in Trojan condoms (whether counterfeit or not). With respect to the Flushing Proceeds, the settlement agreement provided that "within five (5) days of receiving written directive" signed by attorneys for both Church & Dwight and the government, Lin and Jian Hu would pay to Church & Dwight "a portion of" the Flushing Proceeds, the amount of said proceeds to be specified in the written directive. Additionally, the settlement agreement provided that Lin and Jian Hu would "take no position, before this Court or otherwise, as to whether [Church & Dwight] is entitled to the entirety of the Flushing Property Proceeds." Pursuant to this agreement, the Flushing Proceeds were placed in an escrow account pending resolution between Church & Dwight and the government regarding disposition of the funds.

On January 21, 2011, this Court entered default judgment in favor of Church & Dwight against JZ Hu and ZX Trading Corporation jointly and severally in the amount of $6 million. On March 21, 2011, this Court granted a motion from the government to supplement the Order of Forfeiture to specifically include the Flushing Proceeds as a substitute asset. Approximately one month later, Church & Dwight filed the Verified Claim in the instant case, asserting that Church

& Dwight has "superior rights, title, and interest in the Flushing Proceeds as compared to the Government." The government moved to dismiss the Verified Claim, arguing that Church & Dwight lacks standing to petition this Court for a modification of the Order forfeiting the Flushing Proceeds to the government.

## **DISCUSSION**

Under Rule 32.2(c)(1)(A), which governs third-party proceedings following a final order of forfeiture in a criminal case, a court may dismiss a third-party petition for lack of standing. "[A] motion to dismiss a third-party petition in a forfeiture proceeding prior to discovery or a hearing should be treated like a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b)." Pacheco v. Serendensky, 393 F.3d 348, 352 (2d Cir. 2004). Accordingly, "all well-pleaded allegations" in the Verified Claim have been accepted as true and this Court has drawn "all reasonable inferences" in favor of Church & Dwight. Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC, 595 F.3d 86, 91 (2d Cir. 2010); accord Fed. R. Civ. P. 32.2(c)(1)(A). Of course, Church & Dwight's legal conclusions are not entitled to deference. See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

The government does not contest Church & Dwight's standing pursuant to Article III of the United States Constitution, but argues instead that Church & Dwight fails to satisfy the heightened standing requirement that 21 U.S.C. § 853 places on potential claimants of criminal forfeiture assets. According to this criminal forfeiture statute, any person "asserting a *legal interest* in property which has been ordered forfeited to the United States" in a criminal case may "petition the court for a hearing to adjudicate the validity of its alleged interest in the property." 21 U.S.C. § 853(n)(2) (emphasis added). The Second Circuit has interpreted this language as a statutory standing requirement which prevents a claimant from petitioning the court under §

4

853(n)(2) unless the claimant can demonstrate the requisite "legal interest" in the forfeited assets. See, e.g., United States v. Ribadeneira, 105 F.3d 833 (2d Cir. 1997).

If the petition survives any motion to dismiss filed by the government, the court must hold a hearing to determine whether "the petitioner has a *legal right, title, or interest in the property*" that renders the order of forfeiture invalid in whole or in part because the right was "vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant." 21 U.S.C. § 853(6) (emphasis added). The Second Circuit has held that the term "legal interest," for the purpose of standing, has the same meaning as § 853(6)'s requirement that a claimant demonstrate a "legal right, title, or interest in the property." Ribadeneira, 105 F.3d at 835. The Court has thus commented that the standing inquiry "appears to be identical to one 'on the merits' to determine whether a third party meets the statute's requirements." DSI Assocs., LLC v. United States, 496 F.3d 175, 183 n.9 (2d Cir. 2007).

Under this standing inquiry, not every purported interest in forfeited assets rises to the level of a "legal interest" under the meaning of § 853(n)(2). In grappling with the precise meaning of the term "legal interest," the Second Circuit has joined other circuits to construe the word "legal" to mean "'according to the law' as opposed to 'according to what is considered just and equitable.'" United States v. Schwimmer, 968 F.2d 1570, 1582 (2d Cir. 1992).[1] In so ruling, the Court explicitly rejected a narrower interpretation of the term "legal interest" which would read the word "legal" to mean "'traditionally enforceable at law' as opposed to 'traditionally enforceable at equity.'" Id. In other words, a claimant may demonstrate "any right, title or interest recognized under the law," which includes certain rights traditionally

---

[1] In Schwimmer, the Second Circuit discussed this language in the context of 18 U.S.C. § 1963(l)(6), which specifically deals with criminal forfeiture following convictions under RICO. Because the relevant language of § 1963(l)(6) is "substantially identical" to the language of § 853(n)(6), however, the Second Circuit "refer[s] to cases discussing the two statutes interchangeably." Ribadeneira, 105 F.3d at 835.

5

considered equitable, such as a constructive trust. Id.; accord Willis Mgmt. (Vermont), Ltd. v. United States, 652 F.3d 236, 245 (2d Cir. 2011). The contours of a claimant's "legal interest" are to be determined by reference to state law. Willis Mgmt., 652 F.3d at 242.

The Verified Claim alleges that Church & Dwight acquired a "specific legal interest" in the Flushing Proceeds when this Court issued the preliminary injunction restraining the Flushing Proceeds in 2007. Church & Dwight argues that this preliminary injunction created a "particularized lien" on the Flushing Proceeds which Church & Dwight "perfected" by entering into the Trojan Settlement and by obtaining a final judgment against JZ Hu and ZX Trading Corporation. Despite conceding that New York law defines its legal interest in the Flushing Proceeds, however, Church & Dwight does not cite a single New York case to support this argument. Instead, Church & Dwight cites dicta from a footnote in DSI Associates, in which the Second Circuit stated that the claimants in that case could have established a specific legal interest under Connecticut law by "obtaining a judgment lien on the property" to perfect a prejudgment attachment issued by the state court. 496 F.3d at 187 n. 18.

In DSI Associates, the Second Circuit was referring to a procedure under Connecticut law by which a creditor who has obtained a money judgment against a debtor may secure a lien against the debtor's real property. See, e.g., All Seasons Servs., Inc. v. Guildner, 878 A.2d 370, 89 Conn. App. 781, 785 (Conn. App. Ct. 2005). The judgment creditor secures this lien by recording a "judgment lien certificate" in the town clerk's office, which has the effect of securing the creditor's interest in the property. CONN. GEN. STAT. § 52-380a(b) (1984). If the judgment creditor had previously obtained a prejudgment attachment – as the DSI Associates claimants had – the creditor's security interest in the property would relate back to the date of the

attachment. Id. This lien "may be foreclosed or redeemed in the same manner as mortgages on the same property." Id.

If the DSI Associates claimants had obtained a judgment lien pursuant to this procedure, they would have had a security interest under Connecticut law that is analogous to a recorded mortgage. The Court's dicta in DSI Associates therefore provides no support for Church & Dwight's argument, as the "interest" that Church & Dwight possessed in the Flushing Property cannot be compared to a recorded mortgage or to any other legal interest recognized under New York law. This is true whether the preliminary injunction; Trojan Settlement; and default judgment are considered individually or as a whole.

Under New York law, a creditor may obtain a lien on real property by obtaining a prejudgment attachment order and filing a notice of attachment with the county clerk. See N.Y. C.P.L.R. § 6216 (MCKINNEY 2010); Alexander, McKinney's Practice Commentary, C.P.L.R. § 6216 (2010). But Church & Dwight did not obtain an order of attachment on the Flushing Property, and it is not clear that Church & Dwight would have been entitled to an attachment even if it had pursued such a remedy. See N.Y. C.P.L.R. § 6216 (MCKINNEY 2010) (Allowing an order of attachment to be granted only when movant has demonstrated that he "would be entitled . . . to a money judgment" against defendant and that one or more peculiar circumstance exists, such as when "the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment . . . has assigned, disposed of, encumbered or secreted property . . . or is about to do any of these acts."); Siegel v. N. Boulevard & 80th St. Corp., 31 A.D.2d 182, 183, 295 N.Y.S.2d 804 (1st Dep't 1968) ("Attachment is a provisional remedy having as its object securing a debt by preliminary levy upon property . . . . It is strictly a creature of statute and,

therefore, because of its harsh nature and, it being in derogation of the common law, the courts have strictly construed the statute creating it in favor of those against whom it may be employed."). The interest granted to Church & Dwight by the preliminary injunction therefore does not rise to the level of an attachment under New York law. Cf. Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308, 330-32, 199 S.Ct. 1961 (1999) (recognizing distinction between attachment and preliminary injunction); Credit Agricole Indosuez v. Rossiyskiy Kredit Bank, 94 N.Y.2d 541, 548-49, 708 N.Y.S.2d 26 (2000) (same).

The default judgment against ZX Trading Corporation and JZ Hu simply awarded Church & Dwight money damages and made no mention of the Flushing Proceeds. Church & Dwight's contention that this judgment "perfected" a security interest in any particular asset of ZX Trading Corporation or JZ Hu finds no support in the law. Although the money judgment may have given Church & Dwight the right to obtain a lien on specific assets belonging to ZX Trading Corporation or JZ Hu, Church & Dwight did not do so. The result of the default judgment was simply to make Church & Dwight a general creditor of ZX Trading Corporation and JZ Hu.[2] The plain language of § 853(n)(2) requires a claimant to demonstrate a legal right, title, or interest "in" a "particular, specific asset," and it is therefore well settled that general creditors do not possess the requisite legal interest to establish standing. DSI Assocs., 496 F.3d at 184 (internal quotation marks omitted).

Moreover, neither the preliminary injunction, nor the default judgment, nor the settlement agreement appear to satisfy § 9-203 of New York's Uniform Commercial Code, which lists the formal requirements for the attachment of a security interest against collateral. This provision

---

[2] Church & Dwight argue extensively that JZ Hu, rather than Lin Hu, was the true "owner" of the Flushing Property. Because I find that Church & Dwight's relationship to JZ Hu is nothing more than that of a general creditor, I do not find it necessary to determine whether JZ or Lin Hu truly "owned" this property.

states that a security interest attaches only if value has been given and the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party. If the creditor does not have possession of the collateral or a security certificate, as Church & Dwight did not, one of the following conditions must also be met:

> (1) "the debtor has authenticated a security agreement that provides a description of the collateral"; or
>
> (2) "the collateral is deposit accounts, electronic or chattel paper, investment property, or letter-of-credit rights, and the secured party has control [over the funds] pursuant to the debtor's security agreement."

The preliminary injunction does not satisfy § 9-203 because Church & Dwight gave no value for it. By dropping the case against Lin and Jian Hu, Church & Dwight arguably gave value for the settlement agreement. But the terms of the settlement agreement are vague and do not "evince an intent to create a security interest," as is necessary for the creation of a security agreement under the first condition listed in § 9-203. See Lashua v. LaDuke, 272 A.D.2d 750, 752, 707 N.Y.S.2d 542 (3d Dep't 2000); accord Micalden Invs. S.A. v. Rostropovich, 535 F. Supp. 2d 433, 435 (S.D.N.Y. 2008) (this provision of New York's U.C.C. requires "some written evidence of the assignor's intent to grant the security interest"); King v. Tuxedo Enters., Inc., 975 F. Supp. 448, 452 (E.D.N.Y. 1997) (same); Gen. Elec. Capital Commercial Automotive Fin. v. Spartan Motors, 246 A.D.2d 41, 48, 675 N.Y.S.2d 626 (2d Dep't 1998) ("In determining whether a security interest exists, the intent of the parties controls[.]"). The settlement agreement also did not give Church & Dwight control over any particular funds, so the second condition is not satisfied either. The default judgment, as discussed above, does not describe any collateral or give Church & Dwight control over any particular funds.

Church & Dwight's final argument is that the settlement agreement granted it a contractual right to the Flushing Proceeds. Assuming arguendo that a contractual right is a sufficient "legal interest" to establish standing under § 853(n)(2) – the case cited by Church & Dwight for this contention is inapposite – this Court cannot read the settlement agreement to grant such a right to Church & Dwight. The settlement agreement merely makes two provisions with respect to the Flushing Proceeds: 1.) that Lin and Jian Hu will "take no position, before this Court or otherwise, as to whether [Church & Dwight] is entitled to the entirety of the Flushing Property Proceeds"; and 2.) that "within five (5) days of receiving written directive" signed by attorneys for both Church & Dwight and the government, Lin and Jian Hu will pay to Church & Dwight "a portion of" the Flushing Proceeds, the amount of said proceeds to be specified in the written directive. This language does not specify the amount of the Flushing Proceeds to which Church & Dwight may be entitled and it does not provide that Church & Dwight may obtain these funds under any circumstances other than receipt of the written directive. It is essentially a "standstill" which was clearly designed to neither enhance nor detract from whatever claim to the funds Church & Dwight might otherwise have. It therefore did not grant Church & Dwight an enforceable contract right to the Flushing Proceeds.

Considering the preliminary injunction, the settlement agreement, and the default judgment as a whole, one could conclude that it would be fair and equitable for Church & Dwight to receive the entirety of the Flushing Proceeds. This is especially true because the government's case against Lin and Jian Hu was made possible by Church & Dwight's efforts to investigate and prosecute the Hus for civil trademark infringement. However, the Second Circuit has made clear that a "legal interest" under §853(n)(2) does not mean the unfettered application

of a discretionary standard of justice. The interest must be cognizable under state law. Church & Dwight has failed to demonstrate that New York law would recognize its interest in the Flushing Proceeds as "legal."

Because Church & Dwight lacks standing to petition for modification of the forfeiture order, it is not necessary for this Court to reach the merits of the government's argument that the Verified Claim is barred by the fugitive disentitlement doctrine.

## CONCLUSION

The government's motion is granted and the Verified Claim is dismissed.

**SO ORDERED.**

s/ BMC

U.S.D.J.

Dated: Brooklyn, New York
November 22, 2011

11